IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00960-DDD-NRN

ESTATE OF WILFORD DEWEESE,

    Plaintiff,

v.

RONNIE HANCOCK,
DANIEL LEBARON,
LEVI HOOVER, and
JEFFREY SCHUELKE,

    Defendants.

## MOTION TO DISMISS

Defendants, **LEVI HOOVER** and **JEFFREY SCHUELKE**, through their attorneys, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for an order dismissing with prejudice Plaintiff's Complaint (ECF No. 1). In support thereof, Defendants state as follows:

### STATEMENT OF CONFERRAL

Pursuant to DDD Civ. P.S. III(D)(1), counsel for the parties have conferred on these matters via telephone and email. Plaintiff is opposed to the relief requested herein. These defects are not correctable through amendment.

## I. INTRODUCTION

This case arises out of the police-shooting death of Wilford Deweese. On the night of April 11, 2022, Mr. Deweese refused repeated commands to surrender, advised officers he had a gun, and then pulled the gun from his pocket and fired it twice—killing the police dog that had been deployed to subdue him—all while officers were actively trying to take him into custody. Officers returned fire killing Mr. Deweese. Mr. Deweese's Estate ("Plaintiff") is claiming excessive force. As demonstrated below, Plaintiff's allegations are conclusory and ultimately refute the plausibility of these claims. The Complaint should be dismissed with prejudice.

## II. STANDARD OF REVIEW

To survive a motion to dismiss a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court, however, need not accept conclusory allegations without supporting factual averments. *See Aurelio v. Joyce*, 683 F. App'x 731, 734 (10th Cir. 2017). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (internal quotations omitted). Mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.  PLAINTIFF'S ALLEGED FACTS[1]

1. On the night of April 11, 2022, Manitou Springs Police Officers Levi Hoover and Jeffrey Schuelke ("Defendants") responded to a 911 call about a physical altercation between two men involving a firearm. [Complaint, ¶¶ 41–49, 53].

2. Defendants located Mr. Deweese standing between two buildings on a narrow ramp surrounded by a metal railing. The ramp led down into a sunken courtyard. [Complaint, ¶¶ 51–53].

3. With their guns drawn and pointed toward Mr. Deweese, Defendants ordered him to drop what was in his hands, put his hands up, and walk toward the officers. Mr. Deweese did not comply. [Complaint, ¶¶ 53–63].

4. Defendants were subsequently joined by El Paso County Sheriff's Deputy Daniel LeBaron, and repeated similar commands to no avail for approximately 13 minutes before El Paso County Sheriff's Deputy Ronnie Hancock arrived on scene with his police dog Jinx. [Complaint, ¶¶ 64–73].

5. Deputy Hancock took control of the scene and began issuing additional commands for Mr. Deweese to surrender—expressly warning him that Jinx would be deployed to bite him if he failed to comply. [Complaint, ¶¶ 75–83].

6. Mr. Deweese again did not comply and remained stationary near the building and exclaimed he would shoot Jinx if Jinx was deployed to bite him. [Complaint, ¶¶ 84–87].

---

[1] Defendants assume these facts for purposes of this motion only, without admission. Defendants deny they violated Plaintiff's civil rights.

3

7. After Mr. Deweese had refused commands for a total of 20 minutes (roughly seven minutes after Deputy Hancock had arrived), Deputy Hancock deployed Jinx to subdue Mr. Deweese. Officers proceeded close behind with their guns drawn. [Complaint, ¶¶ 90, 98].

8. As Jinx approached Mr. Deweese, Mr. Deweese responded by backing up a few feet and "retreating." He then turned toward Jinx, removed a gun from his pocket, and fired two rounds at Jinx. [Complaint, ¶¶ 108–112].

9. As this was occurring officers returned fire on Mr. Deweese, killing him. [Complaint, ¶¶ 120–123].

## IV. ARGUMENT

The Complaint asserts two claims for relief against Defendants predicated on allegations that (1) the K-9 deployment, and (2) the police shooting, were excessive force in violation of the Fourth Amendment and Article II Section 7 of the Colorado Constitution, pursuant to 42 U.S.C. § 1983 ("§ 1983") and C.R.S. § 13-21-131 ("ELEIA"), respectively. Defendants address the fatal deficiencies of these claims in turn.

### A. NO PLAUSIBLE § 1983 LIABILITY.

Defendants assert qualified immunity as to Plaintiff's § 1983 claims. Accordingly, Plaintiff bears the "heavy two-part burden" of adequately pleading: (1) how each of them violated Mr. Deweese's constitutional rights, and (2) that such rights (and the violations thereof) were clearly established at the time of the alleged conduct. *See Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "[I]n this context, plaintiffs must allege facts sufficient to show … that the defendants plausibly violated their constitutional rights." *Robbins*, 519 F.3d at 1249.

### 1. No underlying violation: No plausible excessive force.

A claim of excessive force is examined for objective reasonableness. This standard "evaluates the force used … against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). What constitutes reasonable action may seem quite different to someone facing a possible assailant or assessing a threat in real-time, than to someone analyzing the question at leisure. *id.* at 396–97; *Phillips v. James*, 422 F.3d 1075–80 (10th Cir. 2005) (recognizing same).

Courts must therefore evaluate "whether the totality of the circumstances justified the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (cleaned up). In making this determination, the Court should weigh three primary factors: (1) the severity of the crime underlying the seizure; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted or attempted to evade arrest by flight. *See id.* (citing *Graham*, 490 U.S. at 396).[2]

a. <u>The K-9 deployment was objectively reasonable.</u>

Recognizing Defendants were not directly responsible for deploying Jinx, Plaintiff postures its First Claim for Relief under a conspiracy and/or failure to intervene theory of

---
[2] These factors are referred to herein as the "*Graham* factors."

5

liability. [Complaint, p. 22]. However, for either of these theories to survive, Plaintiff must have plausibly alleged that Deputy Hancock's decision to deploy Jinx constituted excessive force. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1175 (10th Cir. 2020) ("[A] plaintiff can maintain a claim for failure to intervene only when some other officer used excessive force."); *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1231 (10th Cir. 2020) ("For a valid § 1983 conspiracy claim, plaintiffs must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.") (internal quotations omitted). Thus, Plaintiff's failure to plausibly allege that Jinx's deployment was objectively unreasonable under the claimed circumstances is fatal to this claim. The *Graham* analysis is as follows.

> i. *The severity of Mr. Deweese's underlying crimes warranted Jinx's deployment.*

With respect to the first *Graham* factor, before Jinx was deployed Defendants had been notified via 911 of a potential felony menacing incident involving a firearm. [Complaint, ¶¶ 46–49]. *See* COLO.REV.STAT. § 18-3-206. Mr. Deweese had also threatened to shoot Jinx [Complaint, ¶ 87], which a reasonable officer could conclude would also pose a serious risk to himself and his fellow officers on scene, thereby constituting a second act of felony menacing. A suspected felony is sufficient to push this factor in favor of Defendants. *See Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) ("[O]ur binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent.") (citing *Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018)).

6

> ii. *Mr. Deweese posed a sufficient threat to warrant Jinx's deployment.*

In assessing this factor, the Court must consider whether an officer could reasonably conclude he (or others) were in danger when force was used. *See Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020). "A reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of [] force." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 439 (10th Cir. 2017). In situations where a suspect also poses a threat to the public, the Court must weigh "the level of force used by the officer and the degree of risk posed to innocent bystanders," in addition to "the relative culpability of the parties involved." *See Cordova v. Aragon*, 569 F.3d 1183, 1192–93 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). "[This *Graham*] factor is generally the most important to determine whether an officer acted reasonably." *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023).

Defendants were aware of the following prior to Jinx's deployment: (1) Mr. Deweese may have previously engaged in a violent felony involving a firearm, (2) he had threatened to shoot Jinx, confirming he was still armed and willing to use the firearm, (3) he continually refused to comply with commands—demonstrating he would not surrender peacefully, (4) he was in a confined space, and (5) he was located near a public square in downtown Manitou Springs, thereby posing a heightened risk to nearby civilians. (*Supra*). Under these circumstances it would not have been unreasonable for Deputy Hancock to deploy Jinx to subdue Mr. Deweese. *See, e.g.*, *Gutierrez v. Hackett* 131 F. App'x 621, 623 (10th Cir. 2005) (finding K-9 deployment reasonable against a suspect who had repeatedly ignored commands while in a confined space); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (finding K-9 deployment

reasonable against an armed suspect); *Moya v. City of Clovis*, 829 F. App'x 346, 349 (10th Cir. 2020) (finding no excessive force where K-9 was deployed to subdue uncooperative and unarmed suspect who, the court concluded, posed a threat to bystanders by refusing commands to surrender).

     *iii.*  *Mr. Deweese resisted arrest prior to Jinx's deployment.*

"The third *Graham* factor asks whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Est. of George v. City of Rifle, Colorado*, 85 F.4th 1300, 1316 (10th Cir. 2023) (cleaned up). "But resistance need not be physical. [Courts] have found this third factor to weigh in favor of some degree of physical coercion or threat[ ] when an individual refuses to obey an officer's lawful orders." *Andersen v. DelCore*, 79 F.4th 1153, 1165 (10th Cir. 2023) (cleaned up, internal citation omitted). This is because "[o]fficers must be able to employ force to enforce their lawful orders. Otherwise, an officer's power to give lawful orders 'would be hollow.'" *Id.* at 166 (quoting *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023)).

The allegations make clear Mr. Deweese had continually resisted arrest by refusing multiple orders for approximately 20 minutes, despite being warned about Jinx's deployment. [Complaint, ¶¶ 75–83, 90]. Because the totality of the *Graham* factors show Deputy Hancock's decision to deploy Jinx's was objectively reasonable, Plaintiff's First Claim for Relief should be dismissed.

    b.  <u>The use of deadly force was objectively reasonable.</u>

Plaintiff's Second Claim for Relief is premised on Defendants' use of deadly force. "Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement

8

of the Fourth Amendment." *Reavis Est. of Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (cleaned up, citation omitted). "Therefore, the inquiry is: Whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to [any] underlying intent or motivation." *Palacios*, 61 F.4th at 1256 (cleaned up). "Courts are particularly deferential to the split-second decisions police must make in determining precisely when a deadly threat has passed." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1177 (10th Cir. 2020). Again, "[e]ven a mistaken view of the facts does not preclude a finding that an officer acted reasonably." *Palacios*, 61 F.4th at 1256 (citing *Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010)). This analysis again turns on the *Graham* factors.[3] *See id.*

          *i.*       *The severity of Mr. Deweese's underlying crimes favor Defendants.*

In addition to the suspected felonies discussed above, when Defendants opened fire Mr. Deweese had shot twice at Jinx. [Complaint, ¶¶ 108–112]. Thus, Defendants could have reasonably suspected Mr. Deweese of one or more of the following felonies: aggravated cruelty to a law enforcement animal (COLO.REV.STAT. § 18-9-202(1.5)(b)(II)), first degree assault on a peace officer (COLO.REV.STAT. § 18-3-202(1)(e)), and/or another act of felony menacing (*supra*). This favors a finding of objective reasonableness. *Vette*, 989 F.3d at 1170; *Est. of George*, 85 F.4th at 1316.

---

[3] Plaintiff also alleges that officers "artificially created" an "unreasonable danger" by releasing Jinx and that this, in and of itself, "rendered the shooting unconstitutional." [Complaint, ¶¶ 2, 3, 132]. This is not the law. *Flores v. Henderson*, 101 F.4th 1185, 1194 (10th Cir. 2024) ("Whether an officer *recklessly* creates the need to use force *is merely one important consideration* in the totality of the circumstances.") (cleaned up, emphasis added). Regardless, because Jinx's deployment was reasonable and justified (as previously discussed), Defendants are not liable under a "danger creation" theory. *See id.* at 1194–96 (noting that recklessness in this context connotes an *unjustifiable* and *unreasonable* risk of harm, and finding deadly force warranted against armed/threatening individual despite officer's proactive attempt to locate and subdue him).

9

>  ii.  *Mr. Deweese posed a sufficient threat to warrant deadly force.*

In weighing the second *Graham* factor in a deadly force case, courts must look to the four sub-factors articulated in *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255 (10th Cir. 2008) to assess the "degree of threat" at the time deadly force was used. These sub-factors include: "(1) whether the officer ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Larsen*, 511 F.3d at 1260.[4] Consistent with *Graham*, these sub-factors must be judged from the perspective of a reasonable officer on scene. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015).

With respect to commands, the Complaint does not allege that any meaningful amount of time elapsed between Mr. Deweese drawing and firing his weapon, and Defendants returning fire. Thus, no additional warning would have been required. *Est. of Smart*, 951 F.3d at 1175 (finding no duty to warn in "rapidly evolving circumstances involving deadly threats."). The Tenth Circuit "has [also] held the warning does not need to be specifically that officers are about to open fire." *Palacios*, 61 F.4th at 1259 (citing *Thomson*, 584 F.3d at 1318–19). Here, the Complaint makes clear that officers, with their weapons drawn, gave numerous warnings and commands for Mr. Deweese to surrender—he simply chose not to.

As for hostile motions, Mr. Deweese's act of drawing his weapon as Defendants advanced to subdue him is sufficient to warrant deadly force. Indeed, courts have found reasonable deadly force where the suspect had not even managed to draw or point his weapon,

---

[4] These factors are referred to herein as the "*Larsen* sub-factors."

10

let alone fire it. *See, e.g.*, *Palacios*, 61 F.4th at 1255 ("[E]ven if Mr. Palacios was not pointing his gun directly at the officers (and even assuming he intended to surrender or cover [his] wound), such [ ] is not material.") (parenthetical in original); *Johnson v. City of Roswell*, 752 F. App'x 646, 651 (10th Cir. 2018) (finding suspect "posed a deadly threat and that the application of deadly force was necessary" where suspect was merely "carrying a gun in the 'low ready position,' with the gun moving up and down as he walked."); *see also Larsen*, 511 F.3d at 1260 ("[a] reasonable officer need not await the glint of steel"); *Cooper v. Sheehan*, 735 F.3d 153, 159 n.9 (4th Cir. 2013) ("To be clear, an armed suspect need not engage in some specific action— such as pointing, aiming, or firing his weapon—to pose a threat."); *Wood v. Farmington City*, 910 F. Supp. 2d 1315, 1326 (D. Utah 2012) ("Whether Mr. Wood had a gun in his hand when he was shot does not determine whether [he] posed an immediate threat to the safety of the officers when he was shot.").

In terms of distance, because Mr. Deweese was armed with a gun (not a knife), this sub-factor cuts against a finding of excessive force. *See Est. of Ceballos v. Husk*, 919 F.3d 1204, 1216 (10th Cir. 2019) (acknowledging that suspects armed with guns are "capable of harming someone from a much greater distance and with greater lethal potential" than non-ranged weapons). A photo of the incident immediately prior to the shooting [Complaint, p. 20] also demonstrates that officers had advanced to within several feet of Mr. Deweese, pushing this sub-factor even further in Defendants' favor. *See Larsen*, 511 F.3d at 1260–61 (finding distance between 7 and 20 feet to be sufficient); *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 750 (10th Cir. 2021) (finding distance between 10 and 20 feet to be sufficient); *Palacios*, 61 F.4th 1248, 1260 (finding distance between 15 and 20 feet to be sufficient).

Lastly, with respect to Mr. Deweese's manifest intentions, the fact he repeatedly disregarded commands and warnings over an extended period, threatened to shoot Jinx, and then pulled a gun and fired it at Jinx as officers moved to subdue him, Defendants could reasonably conclude Mr. Deweese had no intentions of surrendering peacefully and would remain hostile. *See Palacios*, 61 F.4th at 1260 (addressing similar facts, stating: "a reasonable officer in [defendants'] positions would conclude that Mr. Palacios made hostile gestures and manifested a hostile intent."); *Est. of Taylor*, 16 F.4th at 771 (same); *Lennen*, 2022 WL 612799, at *8 (finding manifestly hostile intentions where suspect held non-ranged weapon in a way it could be quickly turned on officers, despite never raising or pointing the weapon toward officers); *Est. of George*, 85 F.4th at 1319 (finding manifestly hostile intentions where armed suspect's actions demonstrated an intent to evade and resist arrest). From this, it would have been reasonable for Defendants to conclude Mr. Deweese would remain hostile and pose an immediate safety threat, thereby pushing the balance of the *Larsen* sub-factors, and thus the second (and most decisive) *Graham* factor, in their favor.

        iii.        *Mr. Deweese continued to resist and evaded arrest.*

In addition to ignoring numerous commands over an extended period (discussed above), as the officers advanced on Mr. Deweese with Jinx and before they opened fire, Mr. Deweese "backed up" and "retreated in a defensive manner." [Complaint, ¶ 108]. He then shot at Jinx— manifesting an intent to defeat the very tool officers had selected to effectuate his arrest. *See Lennen*, 2022 WL 612799, at *9 (concluding this factor favored deadly force where suspect refused commands and manifested a hostile intent with a weapon). Because this factor, like the

others, favors a finding of objective reasonableness, Defendants did not plausibly violate Mr. Deweese's Fourth Amendment rights. They are entitled to qualified immunity on this basis.

### 2. No clearly established law.

To demonstrate a right is clearly established a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of authority from other circuit courts) recognizing an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Plaintiff's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourth Amendment rights. *See White v. Pauly*, 580 U.S. 73, 79–80 (2017); *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (emphasis in original). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015)

> We have repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

(cleaned up, emphasis in original). Here, "[i]t is particularly important that a Fourth Amendment right be clearly established in a specific factual scenario because it can be difficult for an officer to determine how the prohibition against excessive force will apply in novel situations." *Arnold v. City of Olathe*, 35 F.4th 778, 793 (10th Cir. 2022).

Plaintiff cannot meet its burden of showing a clearly established violation of Mr. Deweese's civil rights under the alleged circumstances. Specifically, Plaintiff can point to no

binding authority that has found an officer liable for a civil rights conspiracy or failure to intervene in a K-9 deployment under circumstances analogous to those presented in the Complaint, particularly when considering Mr. Deweese's threats of violence, the fact he was armed, and his continued failure to comply. Nor can Plaintiff provide the Court with any binding authority where an officer was found liable for excessive deadly force (whether under a danger creation theory or otherwise) against a non-compliant felony suspect who drew and fired a gun at a police K-9 as officers attempted to take him into custody. For these reasons as well, Defendants are entitled to qualified immunity.

### B. NO PLAUSIBLE LIABILITY UNDER ELEIA.

ELEIA authorizes a private right of action against a peace officer "who, under color of law, subjects or causes to be subjected ... any other person to the deprivation of any individual rights ... secured by the bill of rights, article II of the state constitution." *Ditirro v. Sando*, 520 P.3d 1203 (Colo App. 2022). "Given the similarities between [ELEIA] and § 1983—and between the United States and Colorado Constitutions relating to the protection against unreasonable searches and seizures ...—when determining whether the force used to effect a seizure is reasonable under [ELEIA], courts should apply the 'objective reasonableness' standard articulated in *Graham*." *Woodall v. Godfrey*, 2024 COA 42, ¶ 18.

Defendants therefore incorporate by reference their "objective reasonableness" arguments articulated above. Plaintiff's ELEIA claims fail for the same reasons and should similarly be dismissed.

**WHEREFORE**, for the reasons stated herein, Defendants respectfully request that this Court:

    A.    Enter an Order dismissing Plaintiff's claims against them, with prejudice;

    B.    Enter judgment in their favor and against Plaintiff;

    C.    Award attorney fees and costs against Plaintiff;

    D.    Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

| s/ Eric M. Ziporin | s/ Jonathan N. Eddy |
|---|---|
| ***Eric M. Ziporin*** | ***Jonathan N. Eddy*** |
| SGR, LLC | SGR, LLC |
| 3900 East Mexico Avenue, Suite 700 | 3900 East Mexico Avenue, Suite 700 |
| Denver, Colorado 80210 | Denver, Colorado 80210 |
| Email: eziporin@sgrllc.com | Email: jeddy@sgrllc.com |
| | *Attorneys for Defendants Hoover and Schuelke* |

\*\*\*Counsel hereby certify that the foregoing pleading complies with the type-volume limitation set forth in DDD Civ. P.S. III(A)(1).

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on this 9th day of August, 2024, I electronically filed a true and correct copy of the above and foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Raymond K. Bryant
Luke W. McConnell
E-mail: raymond@rightslitigation.com
E-mail: luke@rightslitigation.com
*Counsel for Plaintiff*

Bryan E. Schmid
Steven W. Martyn
Christopher Strider
Email: bryanschmid@elpasoco.com
Email: stevenmartyn@elpasoco.com
Email: chrisstrider@elpasoco.com
*Counsel For Defendants Hancock and Lebaron*

                                           /s/ Taylor Will
                                           Legal Secretary