**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-00960-DDD-NRN

ESTATE OF WILFORD DEWEESE,

      Plaintiff,

v.

RONNIE HANCOCK,
DANIEL LEBARON,
LEVI HOOVER, and
JEFFREY SCHUELKE,

      Defendants.

---

## EL PASO COUNTY DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

---

    Defendants, Deputy Ronnie Hancock in his individual capacity and Deputy Daniel LeBaron in his individual capacity (collectively the "Deputy Defendants"), by and through the Office of the County Attorney of El Paso County, respectfully move this Honorable Court for an Order dismissing Plaintiff's Complaint pursuant to F.R.Civ.P 12(b)(6).

### Duty to Confer Under D.C.COLO.LCivR.7.1(a)

    Counsel for Plaintiffs and the Deputy Defendants conferred at length via telephone conference on August 7, 2024. Counsel discussed the allegations and claims in the Complaint; the arguments raised in this Motion; and whether amending the Complaint was appropriate. Plaintiff opposes this Motion.

## I.      INTRODUCTION

    The heart of this case is a tragic interaction between Wilford Deweese and four law enforcement agents, including the Deputy Defendants. The interaction was fraught with tension.

The Deputy Defendants knew that Mr. Deweese had brandished a firearm at patrons of a nearby tavern in Manitou Springs. Their encounter with Mr. Deweese occurred in a courtyard with multiple avenues of ingress and egress. An apartment building was across the street, and onlookers watched from windows and verandas. Manitou Springs police had already been ordering Mr. Deweese to surrender for about ten minutes when the Deputy Defendants arrived, and the Deputy Defendants ordered Mr. Deweese to surrender for many minutes more to no avail. After literally pleading with Mr. Deweese to surrender, Deputy Hancock released his K-9 partner, Jinx, and the law enforcement agents followed the dog in. Mr. Deweese shot and killed Jinx and fired at the agents before they returned fire, killing him.

Though Mr. Deweese' death is heartbreaking, the Deputy Defendants used force that is constitutionally permissible under the Fourth Amendment and the reasonableness standard articulated in *Graham v. Connor*, 490 U.S. 386 (1989). Thus, Plaintiff's federal law claims should be dismissed. This same rationale also applies to Plaintiff's claims under Colorado law and warrants dismissal. In sum, the Court should dismiss Plaintiff's Complaint for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

## II.    FACTUAL BACKGROUND

1.    On April 11, 2022, at approximately 2252 hours, Officers Levi Hoover and Jeff Schuelke of the Manitou Springs Police Department were dispatched to a call for service at the Royal Tavern in Manitou Springs, Colorado, on a report of a white male brandishing a firearm at other patrons.

2.    While enroute to the Royal Tavern, Officer Hoover observed a person matching the description of the person who had brandished the firearm at the Royal Tavern, in a courtyard area that is recessed from the main road.

3.      The courtyard area was fenced, with multiple avenues of ingress and egress, including toward the rear. Across the street from the courtyard was an apartment building known as the Barker House, where multiple people were watching from windows and on their verandas.

4.      Officers Hoover and Schuelke pulled over and contacted the man, later identified as Wilford Deweese.

5.      A witness across the street from the scene of the incident captured the incident on video. That video is incorporated by reference in the Complaint and is attached as Exhibit A. (Hereinafter referred to as "Ex. A").  Officer Hoover was equipped with a body-worn camera unit for the duration of the incident. That video is incorporated by reference in the Complaint and is attached as Exhibit B. (Hereinafter referred to as "Ex. B").

6.      For at least the first ten minutes, Officers Hoover and Schuelke gave clear, concise, and repeated commands for Mr. Deweese to drop the items he was holding and put up his hands. *See* Ex. A at 0:00:01-0:10:00; Ex. B at 0:00:15-0:10:37.

7.      Officer Hoover asked several times if Mr. Deweese was armed, to which Mr. Deweese responded by miming "finger guns" at the officers. *See* Ex. A at 0:07:42-0:07:58; Ex. B at 0:09:08-0:09:21.

8.      Mr. Deweese lifted the hem of his shirt, showing the officers he did not have a gun in his waistband. Soon thereafter, the officers attempted to move toward Mr. Deweese. Mr. Deweese then dropped his right hand to his right pants pocket, causing the officers to retreat. *See* Ex. A at 0:08:05-0:09:32; Ex. B at 0:09:27-0:10:57.

9.      At approximately 2315 hours, Deputy Daniel LeBaron of the El Paso County Sheriff's Office arrived at the scene and confirmed that Mr. Deweese had brandished a pistol at the

bartender and patrons of the Royal Tavern. *See* Ex. A at 0:10:10; Ex. B at 0:12:18-0:12:35.

10. At approximately 2316 hours, Deputy Hancock arrived at the scene with his K-9, Jinx. As the on-scene K-9 Deputy, Deputy Hancock assumed command. *See* Ex. A at 0:11:00; Ex. B at 0:12:50.

11. Deputy Hancock issued multiple commands for Mr. Deweese to walk towards the officers with nothing in his hands. Deputy Hancock warned Mr. Deweese approximately 12 times—including approximately 5 "final" warnings—that if he did not comply with the commands, K-9 Jinx would be released and would bite him. *See* Ex. A at 0:11:34-0:19:05; Ex B 0:13:00-0:20:22.

12. Deputy Hancock guaranteed Mr. Deweese that if he complied with the commands, he would be safe. *See* Ex. A at 0:16:35; Ex. B at 0:18:00-0:18:06.

13. Deputy Hancock literally pleaded with Mr. Deweese to comply with the commands, but Mr. Deweese did not comply. *See* Ex. A at 0:12:43-0:12:46; Ex. B at 0:15:14.

14. Mr. Deweese' only response to Deputy Hancock's warnings was to say that if the dog charged at him, Mr. Deweese would shoot the dog.

15. After nearly twenty minutes of commands and warnings, without any indication from Mr. Deweese that he would comply with the directions and commands given to him by the law enforcement officers on the scene, Deputy Hancock released Jinx, who ran toward Mr. Deweese. Deputy Lebaron, Deputy Hancock, Officer Hoover, and Officer Levi followed closely behind Jinx. *See* Ex. A at 0:19:06; Ex. B at 0:20:28.

16. As Jinx approached, Mr. Deweese dropped his right hand to his right pants pocket and produced a handgun. He fired one shot toward Jinx, striking the ground, and a second shot, fatally striking Jinx in the head. *See* Ex. A at 0:19:10: Ex. B at 0:20:32.

17. Mr. Deweese then retreated at least two steps, raised the handgun in the direction of the approaching law enforcement agents, and fired at least one shot. *See* Ex. A at 0:19:12.

18. The officers and deputies returned fire, striking Mr. Deweese multiple times. As he fell to his right, Mr. Deweese fired at least one more shot toward the law enforcement agents. *See* Ex. A at 0:19:13-0:19:20.

19. As they got to Mr. Deweese, Deputy LeBaron used his shield to pin Mr. Deweese' right hand, which was still extended on the ground toward his handgun. *See* Ex. A at 0:19:23; Ex. B at 0:20:50-0:20:52.

20. Law enforcement agents immediately initiated life-saving measures for Mr. Deweese, but he ultimately succumbed to his injuries.

### III.  <u>LEGAL STANDARD</u>

A qualified immunity defense to claims brought under 42 U.S.C. § 1983 ("§ 1983") is properly raised via a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See, e.g., Marshall v. Dix*, 640 F.Supp.3d 1033, 1046 (D. Colo., 2022); *Pueblo Neighborhood Health Ctr., Inc. v. Losavio,* 847 F.2d 642, 645–46 (10th Cir. 1988) ("Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss."). A qualified immunity defense brought pursuant to 12(b)(6) is subject to the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011).

A Rule 12(b)(6) motion is a challenge to the sufficiency of the complaint. To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will it do if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 quoting *Twombly*, at 557. Conclusory allegations are "not entitled to the assumption of truth" and are not considered. *Iqbal*, at 679. A court looks to whether the complaint includes "enough factual matter (taken as true) to suggest that" the plaintiff is entitled to relief. *Twombly*, at 556. If the complaint does not "nudge[] [the plaintiff's] claims across the line from conceivable to plausible," it "must be dismissed." *Id*. at 570.

## IV.   ARGUMENT

### A.   The Court May View the Videos and Other Documents Referred to in the Complaint.

Generally, courts may only consider the contents of a complaint when ruling on a motion to dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, when "evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits ... and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). If a plaintiff does not incorporate by reference or attach a document to its complaint, "[a] district court may consider a document outside the four corners of a complaint in deciding a Rule 12(b)(6) motion if the document is (1) "central" to the plaintiff's claim, (2) "referred to" in the complaint, and (3) free of any genuine dispute over its "authenticity[.]" *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 2024 WL 3335553, at *5 (10th Cir. 2024); accord *Gee*, 627 F.3d at 1186; *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (where "the

document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *Lucio-Vasquez v. City of Aurora*, 2023 WL 2891009, at *2 (D. Colo. 2023) (the Court may consider the [body worn camera] video without converting the Motion to a motion for summary judgment under Rule 12(d) because the audio from this BWC footage is mentioned in the Amended Complaint, central to the claims, and not challenged as inauthentic.).

In the Complaint, Plaintiff incorporates screenshots or "stills" from a video which appears to have been provided by witness Miluzca McCarthy, as filmed from her apartment in the Barker House across the street from the scene of the encounter between Mr. Deweese and the Defendants on the night of April 11, 2022. Exhibit A. Since portions of the McCarthy video are incorporated into the Complaint, the Court may properly consider the video when determining this Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6). *Smith*, 561 F.3d at 1098. Plaintiff refers extensively to the content of those stills and the corresponding videos *vis-à-vis* Plaintiff's description of and commentary on the actions and conduct of Mr. Deweese and the Defendants as shown in the videos. *See* Compl., ¶ 52-58, 61-65, 67, 73-75, 79, 82-83, 85-87, 98, 107-113, and 119-120. Plaintiff's factual assertions, as contained in the foregoing paragraphs, describe the actions of Mr. Deweese and the Defendants in ways that could only be discovered by watching videos which depict the scene and the interactions of the individuals. Plaintiff does not challenge the authenticity of the stills or the videos from which the stills were extracted, and the subject matter of the stills and videos is unquestionably "central to the Plaintiff's claims." Thus, this Court may consider the videos and documents submitted by Defendants in deciding this Rule 12(b)(6) motion. *Tufaro*, 2024 WL 3335553, at *5; s*ee also Estate of Ronquillo by and through Estate of Sanchez v. City & Cnty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017) ("In ruling

on a 12(b)(6) motion to dismiss, however, 'courts may consider not only the complaint itself, but also attached exhibits.'" (citation omitted)).

Accordingly, Plaintiff's allegations are accepted as true except when directly contradicted by the attached videos of the incident. *Ronquillo*, 720 Fed.Appx. at 437 (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.")); *see also Blackmore v. Carlson*, 574 F.Supp.3d 1012, 1024–25 (D. Utah, 2021) ("The Blackmores' assertion that the Hurricane Defendants' version of the facts cannot usurp the allegations in the Complaint unless the Video clearly contradicts those allegations is supported by case law.").

**B.**     **The Deputy Defendants are Entitled to Qualified Immunity.**

A claim of qualified immunity involves a two-step inquiry such that "a plaintiff must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct." *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003) accord *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). A plaintiff must satisfy both prongs of the inquiry to overcome qualified immunity. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

To be clearly established, the law must have been "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). Generally, pursuant to Tenth Circuit precedent, this requires a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains. *Currier*, 242 F.3d at 923 (internal quotations omitted). A plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1184 (10th Cir. 2000). "A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." *B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014).

     1.     *Deputies Hancock and Lebaron are Entitled to Qualified Immunity as Plaintiff Fails to Show a Violation of a Constitutional Right.*

         **a.**    **The Complaint Fails to State a Cognizable Claim for Excessive Force in the Deployment of K-9 Jinx.**

"[*A*]*ll* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ...." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (*emphasis* in original). Under this standard, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012); *Plumhoff v. Rickard*, 572 U.S. 565, 773 (2014) (Such a claim is governed by the Fourth Amendment's "reasonableness" standard.). "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham*, 490 U.S. at 395.

*Graham* requires courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham* at 396. "When evaluating the reasonableness of the officers' actions, courts should consider '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether the suspect is actively

resisting arrest or attempting to evade arrest by flight." *Ronquillo*, 720 F. App'x at 438. In the
case at bar, all three of the *Graham* factors favor the Deputy Defendants.

At approximately 2252 hours on April 11, 2022, Officers Hoover and Schuelke were
dispatched to a call for service at the Royal Tavern in Manitou Springs on a report of a white
male brandishing a firearm at patrons and staff within the tavern. While enroute to the Royal
Tavern, Officer Hoover observed a person matching the description of the person who had
brandished the firearm at the Royal Tavern, and pulled over to initiate contact with the
individual, later identified as Mr. Deweese. While Officers Hoover and Schuelke were
establishing contact with Mr. Deweese, Deputy Lebaron went to the Royal Taven and confirmed
with the bartender that a man matching the description broadcast over the police radio had
removed a pistol from his pocket and pointed it at her after she refused to serve him and told him
to leave the premises. Deputy Lebaron relayed to Officers Hoover and Schuelke that he
confirmed probable cause against Mr. Deweese for felony menacing.[1] Under Tenth Circuit law,
"the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony." *Vette v.
K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021).

"The second *Graham* factor, 'whether the suspect pose[d] an immediate threat to the
safety of the officers or others,' is undoubtedly the 'most important' and fact intensive factor in
determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d
1197, 1215–16 (10th Cir. 2017), *cert. denied* 138 S. Ct. 2650 (2018) (internal citation omitted).
The second and third factors are analyzed at the precise moment that the force is used and "must

---

[1] *See Lucio-Vasquez v. City of Aurora*, 2023 WL 2891009, at *4 (D. Colo. 2023) (quoting C.R.S.
§ 18-3-206). Under Colorado law, a person is guilty of menacing "if, by threat or physical action,
he or she knowingly places or attempts to place another person in fear of imminent serious
bodily injury." C.R.S. § 18-3-206. Menacing is generally a misdemeanor; but it is a felony if
"committed *by the use of a firearm*, knife, or bludgeon or *a simulated firearm*, knife, or
bludgeon." (emphasis added).

be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Ronquillo*, 720 F. App'x at 438-39 (citing *Graham*, 490 U.S. at 396). "[O]fficers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Ronquillo* at 439. A reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of force. *Id.*

To determine whether there was an immediate threat to the officers or to others, courts consider the four non-exhaustive *Larsen* factors: (1) whether the suspect was given orders and the suspect's compliance with the orders; (2) whether any hostile motions were made toward the officers; (3) the physical distance between the officers and the suspect; and (4) the manifest intentions of the suspect. *Palacios*, 61 F.4th at 1258. "If a suspect was given orders and did not comply, this weighs in the officers' favor." *Palacios* at 1259. Further, "simply because a suspect has not yet fired a weapon does not mean that he will not do so in the future, particularly when intentionally keeping his gun with him." *Palacios*, 61 F.4th at 1259 citing *Estate of Valverde by and through Padilla v. Dodge*, 967 F.3d 1049, 1062 (10th Cir. 2020).

In the case at bar, by Plaintiff's own admissions, Mr. Deweese was given multiple orders by the Defendants over the 13-minute period between when he was first encountered by Officers Hoover and Schuelke and when Deputy Hancock arrived on scene with K-9 Jinx. Complaint, ¶ 55-72. Once Deputy Hancock and K-9 Jinx arrived at the scene, Deputy Hancock assumed command control over the scene and began issuing commands to Mr. Deweese, to walk towards the officers with nothing in his hands. Deputy Hancock issued approximately ten explicit warnings to Mr. Deweese, advising him that if he did not comply with the commands the dog would be released and the dog would bite him. Include in the ten warnings were at

least five "final" warnings.[2] Mr. Deweese failed to obey the lawful orders of the law enforcement officers to empty his hands, put his hands in the air and walk out to where the officers were waiting for him. SOF # __. Prior to the arrival of Deputy Hancock and K-9 Jinx, Officers Hoover and Schuelke report trying to move closer to Mr. Deweese after he showed he did not have a weapon in his waistband, but when Mr. Deweese dropped his right hand to his right pants pocket they were forced to retreat (SOF #8) and when Officer Hoover asked Mr. Deweese if he was armed, Mr. Deweese responded by miming "finger guns" at the officers (SOF #7). Thus, the first two *Larsen* factors weigh in Defendants' favor.

As to *Larsen* factor three, because Mr. Deweese was believed to be armed with a handgun, the distance between Mr. Deweese and the officers is of little consequence but weighs in the Defendants' favor since a bullet fired from Mr. Deweese' handgun would close that gap within milliseconds. As to *Larsen* factor four, Mr. Deweese' intentions were abundantly clear: to mislead the officers into believing that he was unarmed by lifting his shirt to show that he did not have a weapon in his waistband but not advising the officers that he had a handgun in his pants pocket. (Compl., ¶55-72). Further, Mr. Deweese expressed his intention to shoot K-9 Jinx should he be released to attack him (Compl., ¶87).

The second *Graham* factor weighs in the Defendants' favor because each of the four *Larsen* factors weigh in the Defendants' favor. "The third *Graham* factor asks whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Est. of George v.*

---

[2] Plaintiff refers to the warnings provided by Deputy Hancock that he would release the dog, and the dog would bite him, within the Complaint. The BWC of Deputy Hoover clearly captures the number of warnings given, the content of the warnings given (including the law enforcement officers pleading with Mr. Deweese to comply with their commands), the clarity and consistency of the warnings, and Mr. Deweese ignoring the warnings and failing to comply with the commands he was given. Deputy Hoover's BWC video provides the best evidence for determination of the *Larsen* factors to the facts of this case. *See* Exhibit B, Deputy Hoover's BWC video, conventionally filed with the Court and incorporated herein by its reference.

*City of Rifle, Colorado*, 85 F.4th 1300, 1316 (10th Cir. 2023). The third Graham factor weighs

in the Defendants' favor because Mr. Deweese failed to obey the plethora of commands given

him by the Defendants prior to the deployment of the K-9 Jinx. *See e.g. Andersen v. DelCore*,

79 F.4th 1153, 1165 (10th Cir. 2023) ("[R]esistance need not be physical. [Courts] have found

this third factor to weigh in favor of some degree of physical coercion or threat[ ] when an

individual refuses to obey an officer's lawful orders."); *Hodge v. Bartram*, 2023 WL 1462746,

at *4 (10th Cir. 2023).

    Plaintiff's First Claim for Relief involves claims of excessive force, conspiracy and

failure to intervene stemming from the deployment of K-9 Jinx. Use of a properly trained

police K-9 is a less than lethal use of force option. *See, e.g., Estate of Valverde by and through

Padilla v. Dodge*, 967 F.3d 1049, 1055 (10th Cir. 2020) ("The K-9 officer's primary

responsibility was the dog, also a less-lethal option."); *Morris v. Opsahl*, 2014 WL 675419, at

*4–5 (D. Colo. 2014) (the International Association of Chiefs of Police (IACP) explains its

view of the use of police canines stating: "Deployment of a police canine should be regarded

as any other tool in the police officer's use-of-force arsenal. On a 'continuum of force,'

deployment of a police canine should be considered a force option below that of deadly force

and about equal to such less-lethal tools as the baton, stun gun, and carotid neck restraint.").

"[T]he Fourth Amendment 'does not require [police] to use the least intrusive means in the

course of a detention, only reasonable ones.'" *Marquez v. City of Albuquerque*, 399 F.3d 1216,

1222 (10th Cir. 2005) (quoting *United States v. Melendez–Garcia,* 28 F.3d 1046, 1052 (10th

Cir.1994)).

    The facts of this case, when viewed in the "totality of circumstances" standard of

*Graham*, requires this Court answer the question of whether the deployment of K-9 Jinx was

an objectively reasonable use of force to bring about the arrest of Mr. Deweese for the violent

crime of felony menacing. Since all three *Graham* factors and all four *Larsen* factors favor the

Defendants, that question can only be answered by the dismissal of Plaintiff's excessive use of

force, conspiracy, and failure to intervene[3] claims from its First Claim for Relief. *Graham,*

*Larsen supra.; see also Tennessee v. Garner*, 471 U.S., at 8–9 (the question is "whether the

totality of the circumstances justifie[s] a particular sort of ... seizure").

       b.     **The Complaint Fails to State a Cognizable Claim for Excessive Use of Deadly Force**.

     Plaintiff's Second Claim for Relief is predicated on the allegation that the use of deadly

force against Mr. Deweese was not objectively reasonable. Nothing could be further from the

truth. "[*A*]*ll* claims that law enforcement officers have used excessive force - deadly or not - in

the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard ...." *Graham*, 490 U.S. at 395

(*emphasis* in original). Under this standard, the question is whether the officers' use of deadly

force was objectively reasonable *in light of the facts and circumstances confronting them*."

*Morris*, 672 F.3d at 1195 (*emphasis* added); *Palacios*, 61 F.4th at 1256. "The 'reasonableness' of

a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." *Campbell v. Whitear*, 2023 WL 6283370, at *3

(D. Utah, 2023) citing *Graham*, 490 U.S. at 397.

---

[3] Dismissal of the excessive use of force claim under *Graham*, mandates the dismissal of Plaintiff's conspiracy and failure to intervene claims as, absent the underlying constitutional violation Plaintiff's conspiracy and failure to intervene claims cannot stand. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty., Oklahoma*, 978 F.3d 1165, 1175 (10th Cir. 2020) ("[A] plaintiff can maintain a claim for failure to intervene only when some other officer used excessive force."); *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1231 (10th Cir. 2020) quoting *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) ("For a valid § 1983 conspiracy claim, plaintiffs 'must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'").

As previously argued, the deployment of K-9 Jinx to facilitate the arrest of Mr. Deweese on a felony menacing charge was objectively reasonable. The question of whether the use of deadly force was objectively reasonable focuses on the few seconds after K-9 Jinx was deployed and when Mr. Deweese drew his handgun from his pocket, pointed it at K-9 Jinx and fired two shots; one of which struck K-9 Jinx in the head and killed him. The determination of whether the use of deadly force was objectively reasonable mandates that the three *Graham* factors and the four *Larsen* factors be applied. The application of the *Graham* and *Larsen* factors to the use of deadly force analysis do not change much from the arguments presented in the previous section related to the deployment of K-9 Jinx, except for some minor tweaking of the second *Graham* factor and factors one and two of *Larsen*.

As for the second *Graham* factor, 'whether the suspect poses an immediate threat to the safety of the officers or others,' is still the 'most important' and fact intensive factor in determining the objective reasonableness of Defendants' use of deadly force." *Pauly*, 874 F.3d at 1215–16. Under the circumstances present, once Mr. Deweese drew his handgun from his front pants pocket and held it in his hand, the threat to the Defendants and the public (who can be seen milling about in the vicinity of the scene in the videos attached as Exhibits A – C) increased exponentially and the use of deadly force becomes *per se* objectively reasonable. *Palacios*, 61 F.4th at 1255 ("[E]ven if Mr. Palacios was not pointing his gun directly at the officers (and even assuming he intended to surrender or cover [his] wound), such [ ] is not material.") (parenthetical in original); *Johnson v. City of Roswell*, 752 F. App'x 646, 651 (10th Cir. 2018) (finding suspect "posed a deadly threat and that the application of deadly force was necessary" where suspect was merely "carrying a gun in the 'low ready position,' with the gun moving up and down as he walked."); *Cooper v. Sheehan*, 735 F.3d 153, 159 n.9 (4th Cir.

2013) ("To be clear, an armed suspect need not engage in some specific action—such as pointing, aiming, or firing his weapon—to pose a threat."); *Wood v. Farmington City*, 910 F. Supp. 2d 1315, 1326 (D. Utah 2012) ("Whether Mr. Wood had a gun in his hand when he was shot does not determine whether [he] posed an immediate threat to the safety of the officers when he was shot."). Once Mr. Deweese drew his handgun and fired it, the Defendants' response of deadly force was unquestionably objectively reasonable and the second *Graham* factor clearly comes down in favor of the Defendants.

As for the first *Larsen* factor, the immeasurably short period of time between Mr. Deweese drawing his handgun from his front pants pocket and firing it in the direction of K-9 Jinx and the Defendants, foreclosed any time for the Defendants to warn Mr. Deweese that they would use deadly force. *Est. of Smart by Smart v. City of Wichita,* 951 F.3d 1161, 1175 (10th Cir. 2020) (finding no duty to warn in "rapidly evolving circumstances involving deadly threats."); *Larsen*, 511 F.3d at 1260 ("[a] reasonable officer need not await the glint of steel"). Thus, factor one of the *Larsen* analysis still favors Defendants. As for *Larsen* factor two, it is axiomatic that when Mr. Deweese drew his handgun from his pocket, pointed it at K-9 Jinx, and fired it at K-9 Jinx and the Defendants (SOF #__), Defendants were authorized to respond in kind and employ deadly force against Mr. Deweese. As argued, all three of the *Graham* factors and all four of the *Larsen* factors come down in favor of the Defendants and establish that the use of deadly force in this case was objectively reasonable. As such, Defendants did not plausibly violate Mr. Deweese' Fourth Amendment rights and are therefore entitled to qualified immunity.

      2.      <u>*Deputies Hancock and Lebaron are Entitled to Qualified Immunity as Plaintiff*</u><br><u>*Fails to Show a Clearly Established Right*</u>.

To be clearly established, the law must have been "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). Generally, pursuant to Tenth Circuit precedent, this requires a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Currier*, 242 F.3d at 923 (internal quotations omitted). A plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents of University of New Mexico*, 219 F.3d 1179, 1184 (10th Cir., 2000). "A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." *B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014).

"Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) quoting *Mullenix v. Luna.,* 577 U.S. 7, 13 (2015). In order "[f]or a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Quinn*, 780 F.3d at 1004–05 quoting *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (internal citations omitted). In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. *Henry*, 62 F.4th at 1253. It is Plaintiff's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourth Amendment rights. *See White v. Pauley*, 137 S.Ct. 548, 552 (2017).

"Claims that law enforcement officials have used excessive force in course of arrest, investigatory stop or other 'seizure' of a person are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. "[The Supreme Court has] stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In *Wesby*, the Supreme Court stated:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*Wesby*, 583 U.S. at 63 (internal citations and quotation marks omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn*, 780 F.3d at 1005 quoting *Weise v. Casper,* 593 F.3d 1163, 1167 (10th Cir. 2010).

"[T]he Supreme Court has 'repeatedly told courts ... not to define clearly established law at a high level of generality.'" *Quinn*, 780 F.3d at 1005; *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Where a "constitutional violation would not have been apparent based on the clearly established law existing at that time [i]t follows ineluctably that the Officers are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim." *Quinn* at 1007.

In the case at bar, Plaintiff cannot show that Defendants violated Mr. Deweese' clearly established rights as Plaintiff cannot point this Court to binding authority showing that the deployment of K-9 Jinx to facilitate the apprehension of a wanted felon who they believed to be

armed and dangerous was violative of Mr. Deweese' constitutional rights under the Fourth Amendment.

**C.** **Plaintiff's state law claims should be dismissed for the same reasons as his federal law claims.**

Plaintiff brings both claims for relief under Colorado's Enhance Law Enforcement Integrity Act ("ELEIA"), C.R.S. § 13-21-131. Compl., pp. 22-23. ELEIA states:

> A peace officer…who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights…secured by the bill of rights, article II of the state constitution, is liable to the injured party….

C.R.S. § 13-21-131(1). ELEIA "is similar to 42 U.S.C. § 1983," and "the Fourth Amendment of the United States Constitution is 'almost identical' to article II, section 7 of the Colorado Constitution." *Woodall v. Godfrey*, 2024 COA 42, ¶ 13 (quoting *People v. Rister*, 803 P.2d 483, 489 (Colo. 1990)). Thus, "when determining whether the force used to effect a seizure is reasonable under article II, section 7 of the Colorado Constitution, courts should apply the 'objective reasonableness' standard articulated in *Graham*." *Woodall*, 2024 COA ¶ 18. This means that the objective reasonableness arguments above for dismissing Plaintiff's federal law claims also support dismissal of his state law claims. The Court should therefore dismiss the Complaint in its entirety.

## CONCLUSION

For all of the foregoing reasons, the El Paso County Defendants respectfully move this Court to dismiss Plaintiff's Complaint based on Plaintiff's failure to state a claim upon which relief can be granted.

WHEREFORE, Defendants, Deputy Hancock and Deputy Lebaron, respectfully request this Court enter an Order granting El Paso County Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and dismissing all of Plaintiff's claims with prejudice together with the

Defendants' reasonable attorneys' fees and costs and for such other and further relief the Court

deems just and proper.

      RESPECTFULLY SUBMITTED this 9th day of August 2024.

                  OFFICE OF THE COUNTY ATTORNEY
                  OF EL PASO COUNTY, COLORADO

                      BY: *_/s/ Bryan E. Schmid_*

                      Bryan E. Schmid, Reg. No. 41873
                      Senior County Attorney
                      Christopher Strider, Reg. No. 33919
                      Assistant County Attorney
                      Steven W. Martyn, Reg. No. 47429
                      Assistant County Attorney
                      200 S. Cascade Ave.
                      Colorado Springs, CO 80903
                      Phone: (719) 520-6485
                      bryanschmid@elpasoco.com
                      chrisstrider@elpasoco.com
                      stevenmartyn@elpasoco.com
                      *Attorneys for El Paso County Defendants*

                      ***I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1)****

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024, I electronically filed the foregoing **EL PASO COUNTY DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will serve a copy on all CM/ECF participants as follows:

Raymond K. Bryant
Luke W. McConnel
Civil Rights Litigation Group, PLLC
1543 Champa Street, Suite 400
Denver, CO 80202
<u>raymond@rightslitigation.com</u>
<u>luke@rightslitigation.com</u>
*Attorneys for Plaintiff*

Jonathan N. Eddy
Eric M. Ziporin
SGR, LLC
3900 East Mexico Drive Avenue, Suite 700
Denver, CO 80210
<u>jeddy@sgrllc.com</u>
<u>eziporin@sgrllc.com</u>
*Attorneys for Defendants Hoover and Schuelke*

*/s/ Sara Metz*
Paralegal
