IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00960-DDD-NRN

ESTATE OF WILFORD DEWEESE,

Plaintiff,

v.

RONNIE HANCOCK,
DANIEL LEBARON,
LEVI HOOVER, and
JEFFREY SCHUELKE,

Defendants.

## ORDER ON DEFENDANTS' JOINT MOTION TO STAY DISCOVERY PENDING DECISION ON MOTION TO DISMISS (ECF No. 25)

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order, ECF No. 27, referring the subject motion, ECF No. 25, issued by Judge Daniel D. Domenico on August 12, 2024.

Now before the Court is Defendants Ronnie Hancock, Daniel Lebaron, Levi Hoover, and Jeffrey Schuelke's ("Defendants") Motion to Stay Discovery and Vacate Scheduling Conference. ECF No. 25. The Court has carefully considered the motion, Plaintiff's response, ECF No. 32, and heard some argument on the issue at a Status Conference held on August 14, 2024. *See* ECF No. 31. The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following order.

I. **BACKGROUND**

This case involves the tragic situation of an armed man (Wilford Deweese) being shot to death by police officers in Manitou Springs, Colorado, after the 67-year old Mr. Deweese shot at a police canine that had been released to attack him. The four defendants in this case are officers of either the Manitou Springs Police Department or the El Paso County Sheriff's Office who responded to reports of a man with a gun.

According to the Complaint, on April 11, 2022, Mr. Deweese was traveling across the country from California to Florida and had stopped in Manitou Springs at an Airbnb rental. Mr. Deweese believed in his right to carry a firearm for protection and was carrying a gun that night. On that evening, he visited some bars in Manitou Springs. An argument started with a bartender at one of the bars. Another patron knocked Mr. Deweese to the ground. According to the Complaint, "Mr. Deweese stood up and attempted to pull a gun from out of his pocket to show that he could defend himself against what appeared to be an overwhelming crowd of hostiles." ECF No. 1 ¶ 44. But his gun got caught on his pants. The bartender saw the gun and yelled, "He's got a gun, call 911." *Id.* ¶ 46. Per the Complaint, Mr. Deweese did not fire the weapon or hurt anyone and left the bar before any further problems could ensue.

911 was called and police were dispatched. Mr. Deweese walked several blocks down Manitou Avenue toward a local art installation centered in an open courtyard. Police found Mr. Deweese in the courtyard, and the police drew their guns. The officers yelled at Mr. Deweese, giving him allegedly conflicting instructions. The Complaint states that "[a]ny person in Mr. Deweese's position would and should have been reasonably concerned for their safety with officers aiming their firearms at him in the

2

manner they did." *Id.* ¶ 60. Mr. Deweese had been on the phone with a friend seeking contact information for an attorney. He held up the phone for the officers to see and took out the contents of a bag he held in the other hand for the officers to see. For twenty minutes, Mr. Deweese stood by a railing, responding to some commands, but he did not affirmatively walk out to the officers while they were pointing their firearms at him. According to the Complaint, "[a]s Mr. Deweese stood there, non-threateningly, trying to explain to the officers that he had been assaulted and robbed and that they should leave him alone, they told him that he could spend all night there talking to them because the officers had nowhere to go." *Id.* ¶ 67.

The Defendant police officers requested backup and several El Paso County Sheriff's Deputies made their way to the scene. Among the officers who arrived was Defendant Ronnie Hancock with his canine, Jinx. The Complaint asserts that Defendants were not facing a tense or fast-paced situation where they were in danger and required to act hastily. Instead, they had the opportunity to discuss a plan, de-escalate, and consider less harmful alternatives. *Id.* at ¶¶ 76–78.

Approximately 20 minutes into the stand-off, canine handler Hancock yelled that if Mr. Deweese did not walk out with his hands up, he would send the dog to bite him. Mr. Deweese responded that he would defend himself if forced to by shooting the dog if it was sent to attack him.

The officers decided to end the situation by sending in the dog and then rushing in behind with firearms ready. Per the Complaint, "[a]t the time, the officers had various forms of less-lethal options and other protective equipment, including Tasers, pepper spray, bullet-proof vests, and a ballistics shield that protected any officer that carried it

from the knees up." *Id.* ¶ 93. Another option was a 40 mm sponge/beanbag cannon that could be used to stun without causing serious injury. *Id.* ¶ 94. Per the Complaint, the El Paso County Sheriff's Office had trained and instructed its officers that canines should not be used once a suspect has been located and the person does not appear to present an immediate threat or risk of escape. *Id.* ¶ 101. Nevertheless, the dog was deployed. Mr. Deweese pulled a handgun from his pocket and fired it at the attacking dog but, according to the Complaint, away from the officers. The law enforcement officers then opened fire—shooting 40–50 times and hitting Mr. Deweese 22 times. He died soon thereafter while being cared for by paramedics, who arrived a short time later.

Mr. Deweese's estate brings civil rights claims under 42 U.S.C. § 1983 for excessive force in deploying the canine and in using deadly force in violation of the Fourth Amendment of the United States Constitution and Colorado's Constitution Art. II.

Defendants Levi Hoover and Jeffrey Schuelke have moved to dismiss this action for failure to state a claim on the basis of qualified immunity. ECF No. 26. These officers argue that even the facts as pled (and confirmed by the videotape referenced repeatedly in the Complaint) favor a finding of objective reasonableness with respect to the officers' conduct. In addition, there is no Supreme Court or Tenth Circuit precedent where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourth Amendment rights. Therefore, the defendant officers insist they are entitled to qualified immunity. *Id.*

Consistent with the motion to dismiss on qualified immunity grounds, Defendants have moved to stay the case pending a determination of the qualified immunity defense. ECF No. 25. Plaintiff opposes a stay, arguing that the qualified immunity defense will

4

fail, in part because there is established law making clear that sending a canine to attack without any legitimate justification is a Constitutional violation, and because qualified immunity cannot be raised as a basis to dismiss the parallel claim of excessive force brought pursuant to Colo. Rev. Stat. § 13-21-131. ECF No. 32 at 2.

## II.  ANALYSIS

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. But this Court nevertheless uses a multi-factor test to decide whether to stay a case pending a decision on a motion to dismiss. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. March 30, 2006). Federal Rule of Civil Procedure 26 provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Moreover, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)). An order staying discovery is thus an appropriate exercise of this Court's discretion. *Id.*

A stay of all discovery is generally disfavored. *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009). However, courts have routinely recognized that

proceeding to discovery may be inappropriate while issues of immunity or jurisdiction are being resolved. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991) (noting that immunity is a threshold issue, and discovery should not be allowed while the issue is pending); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (same). Similarly, a stay may be appropriate if "resolution of a preliminary motion may dispose of the entire action." *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003); *see also Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved."). The Supreme Court has stated that evaluating the defense of qualified immunity is a threshold issue, and "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (same).

Immunity provisions, whether qualified, absolute or pursuant to the Eleventh Amendment, are meant to free officials from the concerns of litigation, including avoidance of disruptive discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)); *see also Workman*, 958 F.2d at 335 (noting that qualified immunity, if successful, protects an official both from liability and the ordinary burdens of litigation, including far-ranging discovery) (citing *Harlow*, 457 U.S. at 817–18).

Qualified immunity protections serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn-out lawsuit," and are "effectively lost" if a case is permitted to proceed while questions of

immunity are pending. *Siegert*, 500 U.S. at 232–33 (quoting in part *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts generally prefer to resolve questions of jurisdiction and immunity at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties. *See Behrens v. Pelletier*, 516 U.S. 299, 308 & 310 (1996) (noting that discovery can be particularly disruptive when a dispositive motion regarding immunity is pending); *Moore v. Busby*, 92 F. App'x. 699, 702 (10th Cir. 2004) (affirming trial court's stay of discovery pending resolution of absolute immunity question); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) ("[T]he Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" (citation omitted)). Qualified immunity "give[s] government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery . . . .'" *Behrens*, 516 U.S. at 308 (citation omitted). The Court is obligated to "exercise its discretion so that officials [properly asserting qualified immunity] are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford–El v. Britton*, 523 U.S. 574, 597–98 (1998).

That said, the defense of qualified immunity is not necessarily "a bar to all discovery." *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004). There are certain circumstances when discovery is permissible despite an assertion of qualified immunity, including cases alleging official-capacity claims, requests for injunctive (as opposed to monetary) relief, and claims against entities, not individuals. *See Rome*, 225 F.R.D. at 643. Additionally, permitting discovery up until the point that qualified immunity is raised

7

may be appropriate, particularly when the defense is not advanced until the filing of a motion for summary judgment. *Id.* at 643–44.

When considering a stay of discovery, this Court has considered the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See String Cheese Incident*, 2006 WL 894955, at *2.

I find that the Defendants' assertion of qualified immunity and the consideration of the various *String Cheese* factors militate, in this instance, in favor of a stay.

Plaintiff is the estate of the decedent, Mr. Deweese. Without minimizing in any way the tragic loss of Mr. Deweese's life, it is fair to say that Plaintiff here has less of an interest in proceeding expeditiously with this civil action than if the victim of the alleged Constitutional violations were still living, injured, and in need of money to pay medical bills. In addition, the facts of this case transpired over a relatively short period of time and were extensively documented by body cameras, a third-party video, and presumably contemporaneous law enforcement reports. The threat of loss of evidence seems less serious than in a case that took place over a longer timeframe.

The Court also acknowledges the efficiency and fairness of delaying the proceedings pending resolution of a motion to dismiss that could resolve this matter in its entirety. *See Harris v. United States*, No. 09-cv-02658-PAB-KLM, 2010 WL 1687915, at *1 (D. Colo. Apr. 27, 2010) ("[n]either [the Court's] nor the parties' time is well-served by being involved in the 'struggle over the substance of the suit' when, as here, a dispositive motion is pending.") (citations omitted). The Court recognizes that Plaintiff

has brought claims under Colorado law and that federal qualified immunity does not apply to a state claim. But if Defendants are successful in getting the federal claims dismissed on qualified immunity grounds, then it the Court will almost certainly decline to exercise supplemental jurisdiction over the remaining state claim or claims, and the matter would be dismissed for the purpose of being refiled in state court. *See Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) (explaining that supplemental jurisdiction is a doctrine of discretion and "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well") (citing *United Mine Works of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238–39 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial.").

In addition, the fact that certain claims may not be subject to a qualified immunity defense is not a good reason for allowing discovery to proceed in the face of a legitimate, plausible qualified immunity defense for certain defendants on certain claims. *See Lucero v. City of Aurora*, 2023 WL 5957126, at *3 (D. Colo. Sept. 13, 2023) ("[T]he Supreme Court [has] made clear that discovery must be stayed upon assertion of qualified immunity, even if there are claims that are not subject to a qualified immunity defense; otherwise, the defense is lost[.]" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009)). If discovery were allowed to proceed on the state claims while discovery is stayed on the federal claims, then immunity would be lost, especially in a case like this, where there is near perfect congruence between the federal and state claims. The

9

defendant officers would be forced to appear at deposition and pay lawyers to ensure that their own interests continue to be protected. *See Thompson v. Williams*, 2021 WL 4748663, at *6 (D. Colo. Oct. 12, 2021) (granting stay on basis that "it would be particularly difficult to distinguish between discovery related to claims that may be subject to [] immunity, and those that are not."). The Court also notes that Plaintiff chose to bring this lawsuit in federal court, knowing that the doctrine of qualified immunity is still a powerful defense that usually favors a stay of proceedings pending its resolution at the threshold of the case. Plaintiff could have chosen to sue only in state court on state law grounds, avoiding the prospect of the federal qualified immunity defense. Having chosen a federal forum, Plaintiff must accept the procedural hurdles that usually come with that forum.

The third *String Cheese* factor also favors a stay. "Although the court has an interest in managing its docket by seeing cases proceed expeditiously, any inconvenience that might result from rescheduling the docket is outweighed by the potential waste of judicial and party resources that would result from allowing discovery to proceed, only to have the case dismissed in its entirety on the grounds raised in the motions to dismiss." *Lincoln v. Maketa*, Civ. No. 15-cv-00423-CMA-KMT, 2015 WL 3413271, at *3 (D. Colo. May 28, 20015).

Finally, the Court finds that the interests of non-parties and the public interest do not greatly favor one side.

Plaintiff has urged the Court to take a "preliminary peek" at the motion to dismiss to determine whether there appears to be an "immediate and clear possibility" that it will be granted. *See* ECF No. 32 at 3. In connection with a motion to stay, a "preliminary

peek" involves considering the potential merits of the dispositive motion and assessing the likelihood the motion to dismiss will be granted. *See, e.g., Tradebay, LLC v. eBay. Inc.*, 278 F.R.D. 597, 602–03 (D. Nev. 2011) (agreeing to the propriety of a preliminary peek at the merits of the motion to dismiss, and stating that a stay of all discovery should be ordered if the court is "convinced" that a plaintiff will be unable to state a claim for relief); *Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, Civ. No. S-07-0142 LKK GGH, 2007 WL 1146607, at *2 (E.D. Cal. 2007) (taking a "peek" at the motion to dismiss to assess whether the defendant has made a "clear and convincing showing," that it will prevail on the merits of the dispositive motion); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000) (stating the court should "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." (citing *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)); *Feldman*, 176 F.R.D. at 652–53 (explaining that while it is not necessary to decide the motion to dismiss to determine the motion to stay discovery, "it is necessary for the Court to 'take a preliminary peek' at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case dispositive"); *but see Estate of Thakuri by and through Thakuri v. City of Westminster*, No. 19-cv-02412-DDD-KLM, 2019 WL 6828306, at *2 (D. Colo., Dec. 12. 2019) (declining to take a "preliminary peek" at the merits of a dispositive motion on a motion to stay because to do so would "essentially require adjudication of the dispositive motion at the same time, thus negating the entire purpose of the motion to stay and inappropriately usurping the District Judge's authority to determine the merits of the Motion to Dismiss").

The Court has previously used the "preliminary peek" approach in a case where the motion to dismiss was also referred to me for a recommendation. *See Bacote v. Fed. Bureau of Prisons*, No. 17-cv-03111-RM-NRN, 2019 WL 5964957, at *2 (D. Colo. Nov. 13, 2019) (where Judge Raymond P. Moore found it reasonable and not clearly erroneous when this Court took a "preliminary peek" at the merits of a dismissal motion in deciding whether to stay discovery). But in a case like the instant one, where the motion to dismiss has not been referred to the magistrate judge for recommendation, taking a "preliminary peek" and even superficially evaluating a pending dispositive motion, could put the magistrate judge in an awkward position vis-à-vis the district judge who will be ultimately deciding the question. *See Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *8 (E.D. Cal. Feb. 7, 2011) (recognizing the "awkward nature" of the preliminary peek review procedure and emphasizing that the magistrate judge deciding the motion to stay is not the judge who will hear and resolve the defendant's motion to dismiss).

Without offering any opinion on the ultimate question of whether the motion to dismiss will be successful, the Court finds that the motion to dismiss has sufficient potential merit to justify the imposition of a stay. One issue raised by the motion and Plaintiff's response is whether the use of a canine (a non-lethal, but potentially serious, measure) to subdue a person wanted for felony menacing and believed to be armed, can constitute excessive force under the Fourth Amendment under the circumstances presented here—where Mr. Deweese was not fleeing and apparently not presenting any immediate or direct threat to the investigating officers, but was refusing to obey commands. A second question is whether the use of lethal force is constitutionally

permitted to protect or defend a police canine and its handler where the dog is being shot at by a person wanted for felony menacing and the dog has been unleashed to attempt to subdue the individual. Related questions, important to the qualified immunity inquiry, is whether there is clearly established caselaw from either the Tenth Circuit or the Supreme Court recognizing an actional constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012) (citing cases for the proposition that in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains).

Having quickly reviewed the motion, the response, but without having done extensive research, it appears that the answers to these multiple questions are sufficiently opaque that they should be resolved at the threshold, before discovery is permitted.

## III.  CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Stay Discovery, ECF No. 25, is **GRANTED** as follows. All discovery is **STAYED** until after Judge Domenico issues a final ruling on Defendants' Motion to Dismiss, ECF No. 26, or until further Order of Court.

Dated: September 27, 2024
  Denver, Colorado

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge